# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LISA WELLS, Individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:21-cv-00865 ) |
| COMMUNITY HEALTH SYSTEMS, INC., CHS/COMMUNITY HEALTH SYSTEMS, INC., CLARKSVILLE HEALTH SYSTEM, G.P., KNOXVILLE HMA HOLDINGS, LLC, JEFFERSON COUNTY HMA, LLC, CAMPBELL COUNTY HMA, LLC, COCKE COUNTY HMA, LLC, METRO KNOXVILLE HMA, LLC, AND CLEVELAND TENNESSEE HOSPITAL COMPANY, LLC, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, brought by Lisa Wells on behalf of herself and other similarly situated individuals who were (1) employed by Community Health Systems, Inc. and its subsidiaries or affiliates, and (2) required to perform patient care during unpaid meal breaks. Now before the Court is Defendants' Partial Motion to Dismiss (Doc. No. 44), as well as Plaintiff's Motion for Conditional Certification and Court Supervised Notice to Putative Class Members Pursuant to 29 U.S.C. § 216(b) (Doc. No. 30). Both Motions have been fully briefed by the parties (Doc. Nos. 31-33, 43-47) and, after a review of the factual allegations, will be considered in turn.

### I. Factual Allegations

To place the legal arguments in context, only a succinct discussion of the alleged facts is

necessary. Drawn primarily from the controlling Amended Complaint (Doc. No. 37) and the Declarations that have been filed by employees who have consented to join in this action (Doc. Nos. 31-1, 31-2, 31-3, 31-4, 31-5), these are the relevant facts:

Plaintiff is an hourly, non-exempt employee who is responsible for providing care to patients, assisting doctors, and managing patient records. She claims to have been required by her employer to work overtime, and did so on a regular basis. (Doc. No. 31-1 Wells Dec. ¶¶ 9, 11). Defendants operate hospitals throughout Tennessee under the umbrella "Tennova Healthcare." (Cmpl. ¶ 31).

Plaintiff contends that Defendants required care providers like her to remain on call and meet patient demands throughout the workday. This included during meal breaks. (Id. ¶¶ 5, 52, 54–55). Despite this work requirement, Defendants maintained a policy and practice of automatically deducting meal breaks from her pay, even when she was caring for patients.

Plaintiff claims not to be alone in having her pay shorted, and she brings this collective action on behalf of herself and others were not paid during meal breaks. Four of those other hourly employees have since filed Declarations (Doc. No. 32-2, 32-3, 32-4, 32-5) in which they, too, aver they were required work off-the-clock during their meal breaks, and that this work was demanded by their employers. In addition to, or apart from, the duties listed by Plaintiff, some of their duties included performing EKG tests, drawing lab samples, administering medications and treatments, and performing wound care. (See, e.g., Doc. No. 31-2, Euler Decl. ¶ 7). A portion of this work necessarily occurred during what would otherwise be a meal break, but Defendants automatically deducted thirty (30) minutes from these hourly worker's pay each day. This remained so, even though the employees were never fully relieved of their job duties during meal breaks and continued

working. (See, e.g., Doc. No. 31-4, McKelvie Decl. ¶ 9).

Additionally some employees allege that Defendants required patient care providers to carry their cell phones at all times so they could be alerted if a patient needed care and, at least some of the hospitals, had a call light system that alerted the care givers when a patient needed assistance. (Id. ¶¶ 13-14). Due to constant patient demands, Plaintiffs and those who have consented to join this suit claim it was impossible to have a completely uninterrupted 30-minute meal break. (Id. ¶ 11).

As a result of the foregoing, Plaintiff insist that Defendants' policy of requiring its hourly employees to work through their breakfast, lunch, or dinner breaks while simultaneously docking pay violates assorted provisions of the FLSA, including 29 U.S.C. §§ 206, 207, and 215(a)(2). She further alleges that the violation was willful or, at a minimum, enacted with reckless disregard of the FLSA. (Id. ¶¶ 60–62, 78). Plaintiff demands damages in the form of unpaid wages, together with liquidated damages, attorneys' fees and costs. (Id. ¶ 83).

## II. Partial Motion to Dismiss

Defendants' Partial Motion to Dismiss purportedly "seeks to clarify the morass Plaintiffs created, create clarity for the parties regarding what statute of limitations period applies to which Plaintiffs and which Defendants, and move to dismiss all FLSA violations predating the FLSA's maximum three-year statute of limitations." (Doc. No. 45 at 2). This supposed morass began when, with the filing of the original Complaint filed on November 17, 2021, Wells submitted a "Consent to Join Wage Claim" that read:

> 1. I hereby consent to participate in a collective action lawsuit against **Clarksville Health System, G.P. d/b/a Tennova Healthcare** to pursue my claims of unpaid overtime during the time that I worked with the company.
>
> 2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and

3

consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at ANDERSON ALEXANDER, PLLC as my attorneys to prosecute my wage claims.

4. I intend to pursue my claim individually, unless and until the Court certifies this case as a collective action. I agree to serve as the Class Representative if the Court so approves. If someone else serves as the Class Representative, then I designate the Class Representative(s) as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with Plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at ANDERSON ALEXANDER, PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

(Doc. No. 1-1 at 1) (emphasis in original).

The confusion supposedly continued (1) on November 23, 2021 when 24 additional "Consent to Join Wage" claim forms were filed that stated the signators each agreed to "participate in a collective action lawsuit against Clarksville Health System, G.P. d/b/a Tennova Healthcare to pursue my claims of unpaid overtime during the time that I worked with the company," (Doc. No. 8-1); and (2) on December 6, 2021 when one more individual filed an identical consent form (Doc. No. 12-1). The problem, according to Defendants, however, was that "Clarksville Health System" was not a named Defendant in the original Complaint. Rather, it became a Defendant on May 26, 2022, with the filing of the Amended Complaint.

Defendants submit that the supposedly "invalid consents have created numerous issues with respect to when the FLSA's statute of limitations has been tolled, if at all, and when it was tolled as to which Defendants." (Doc. No. 45 at 2). Because, however, the Court finds the consents valid, it is unnecessary to wade into the alleged "morass" of whether tolling is necessary or proper as to

some or all claims.

In support of their position that the consent forms were insufficient as a matter of law, Defendants cite 29 U.S.C. § 216(b) for the proposition that "[t]he importance of consent forms comes straight from the FLSA's text." (Doc. No. 45 at 6). They also cite 29 U.S.C. § 256(a) for the proposition that an FLSA action is commenced when a complaint and a written consent to becoming a party-plaintiff are filed.

Both of Defendants' statements are true, but neither statute says anything about the content of the consent form, only that one must be filed and that each individual's claim for purposes of the statute of limitations commences with the filing of his or her consent. Specifically, Section 216(b) states in relevant part:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C.A. § 216. Section 256, in turn, provides that an action under the FLSA "shall be considered to be commenced in the case of an individual claimant – a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear – on the subsequent date on which such written consent is filed in the court in which the action was commenced." 29 U.S.C.A. § 256. To meet the "requirement[s] of Sections 216 and 256," therefore, "a signed

5

declaration that 'manifests a clear intent to be a party plaintiff is sufficient to operate as consent." Faust v. Comcast Cable Communications Management, LLC, 2013 WL 5587291 at *5 (D. Md Oct. 9, 2013). Each of the "Consent to Join Wage Claim" forms filed in this case evidence a clear intent of the employees to join in a collective action against their employers for unpaid wages.

Nevertheless, in their reply, Defendants double-down on the argument that the "statute's plain text" makes clear that the ones filed here were deficient. In doing so, they neglect to consider that in Frye v. Baptist Mem'l Hosp., Inc., 495 F. App'x 669, 676 (6th Cir. 2012) – a case on which they rely for another point – the Sixth Circuit observed that "the FLSA does not specify the form of a written consent," so long as there is "a filed written consent."

"[C]ourts have generally not taken a strict approach with regard to the form of the written consent, at least with respect to named plaintiffs. All that is required is a signed statement indicating the plaintiff's intent, and consent, to participate as a plaintiff in the collective action." Judd v. KeyPoint Gov't Sols., Inc., No. 18-CV-00327-RM-STV, 2018 WL 3057880, at *3 (D. Colo. June 20, 2018) (citation omitted) (collecting cases); see also, Roby v. Lincoln Elec. Co., 534 F. Supp. 3d 863, 868 (N.D. Ohio 2021) (collecting cases and stating that "these cases all confirm that the form of the written consent is not strictly prescribed"); Manning v. Gold Belt Falcon, LLC, 817 F. Supp. 2d 451, 454 (D.N.J. 2011) ("With respect to form, courts have shown considerable flexibility as long as the signed document indicates a consent to join the lawsuit."); Perkins v. S. New Eng. Tel. Co., No. 3:07-cv-967 (JCH), 2009 WL 3754079, at *3 n.2 (D. Conn. Nov. 4, 2009) ("[W]hile a consent form need not take any specific form, courts have generally accepted irregular consent forms where the signed document verifies the complaint, indicates a desire to have legal action taken to protect the party's rights, or states a desire to become a party plaintiff.").

The "purpose of the consent requirement, presumably, is to 'put the [d]efendants on notice' and 'to ensure that each plaintiff intends to participate in the case, and is not simply a procedural figurehead for an enterprising class action lawyer.'" Callari v. Blackman Plumbing Supply, Inc., 988 F. Supp.2d 261, 282 (E.D.N.Y. 2013) (quoting D'Antuono v. C&G of Groton, Inc., 2012 WL 1188197, at *2 (D. Conn. Apr. 19, 2012)). The notices filed in this action fulfill both purposes.

Even though "Defendants agree with Plaintiff that a key factor is notice," they claim to have been "deprived of that notice because the Original Complaint and Consent Form contradicted each other (*i.e.*, suing the Original Defendants as joint employers on the one hand, while on the other hand consenting to sue a non-Defendant who Plaintiff did not allege employed her." (Doc. No. 47 at 3). This was only "compounded," Defendants insists, when Wells claimed in her declaration "that she was an employee of the Original Defendant but did not include Clarksville Health System, G.P. as a defendant or as one of her employers." (Id.).

These arguments are difficult to accept on their face, given that the Consent Forms identified "Clarksville Health System, G.P. d/b/a Tennova Healthcare" as the employer, and the original Complaint identified Defendants collectively as "Tennova Healthcare." (Doc. No. 1 at 1). And it is well near impossible to accept Defendants' argument about insufficient notice when one considers their Answer to the original Complaint wherein they (1) decline to directly dispute Plaintiffs' allegation in paragraph 2 of the Complaint that they are "persons who worked for Defendants as care providers," (Doc. No. 1, Cmpt. ¶ 2), but instead merely admit that Plaintiffs seek to establish a collective action (albeit an unwarranted one) (Doc. No. 25 at 2); (2) admit that Plaintiff was not classified as an exempt employee under the FLSA (id.); and (3) admit in several paragraphs "that some of the employees of the individual hospital Defendants automatically have a 30-minute meal

7

break deducted from their hours worked," (e.g., Id. at 5, ¶ 55). Nowhere is there any suggestion that Defendants never heard of Wells or any of the two dozen other individuals who later filed consents, likely because those consents, coupled with the allegations in the original Complaint, put Defendants on notice of "what allegations they face[d] and from whom the allegations originate[d]." Lee v. Vance Exec. Protection Inc., 7 F. App'x 160, 167 (4th Cir. 2001). Defendants' arguments to the contrary and claimed confusion border on the glib.

Although Defendants' Partial Motion to Dismiss will be denied, the dismissal of two individuals who filed consents is appropriate. Those two, Laura Euler and Gina Pomeroy, filed their Consent Forms on November 23, 2021, but left their employment with Defendants ended in June 2018. Because this is beyond the three-year limitation for willful violations of the FLSA and Plaintiff concedes as much, their claims will be dismissed.

### III. Motion to Conditionally Certify a Class

Plaintiff seeks to conditionally certify a collective action pursuant to Section 216(b) of the FLSA identified as follows:

> All Care Providers who worked for Community Health Systems, Inc.; Knoxville HMA Holdings, LLC; Jefferson County HMA, LLC; Campbell County HMA, LLC; Cocke County HMA, LLC; Metro Knoxville HMA, LLC; and/or Cleveland Tennessee Hospital Company, LLC, at any time from November 17, 2018, through the final disposition of this matter[.]

(Doc. No. 31 at 2). Notwithstanding that notice-stage certification requires only a "modest factual showing" that the plaintiff's position is "similar, not identical, to the positions held by the putative class members," Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006), Defendants raise a number of objections to Plaintiffs' request for conditional certification.

8

First, Defendants spend a number of pages arguing that a conditional class cannot be certified "as a matter of law." This is because "'[t]o bring a collective FLSA action, a plaintiff must file a written consent to opt-in to the collective action.'" (Doc. No. 32 at 2 quoting Frye , 495 F. App's at 675-76). Because "[a]n FLSA collective action does not commence with the filing of a plaintiff's complaint," and reiterating that "the importance of consents forms comes straight from the FLSA's text," (id.), Defendants argue that a collective action cannot be maintained here because valid consent forms were not filed. The Court has already addressed and rejected this argument and need not discuss the matter further.

Second, Defendants argue that "the proposed class does not describe an FLSA violation." (Id. at 4). The Court agrees because the proposed class consists of all care givers who worked for Defendants from November 17, 2018 on, without differentiating between salaried and hourly employees or any indication of the claimed FLSA violation. This is an easy fix, however. The Court can, and will, add the phrase, "and was subject to an automatic meal-break deduction," to the end of the paragraph proposed by Plaintiff.

Third, and somewhat relatedly, Defendants quote the trial court decision in Frye for the proposition that the "mere adoption of a system that, by default, deducts meal breaks from its employees' compensation does not constitute a unified policy of FLSA violations capable of binding the Plaintiffs together." Frye v. Baptist Mem'l Hosp., No. CIV. 07-2708, 2010 WL 3862591, at *5 (W.D. Tenn. Sept. 27, 2010). Tellingly, however, the decision in Frye was made in the context of a motion to decertify collective action, not at the notice-stage "where the Court applies a 'fairly lenient' standard to determine whether the named plaintiffs have demonstrated they are similarly situated to the putative plaintiffs[.]" Lindberg v. UHS of Lakeside, LLC, 761 F. Supp. 2d 752, 762

9

(W.D. Tenn. 2011); see also, Campbell v. Middle Kentucky Cmty. Action P'ship, Inc., No. 5:20-CV-222-REW, 2021 WL 2012298 (E.D. Ky. May 20, 2021) ("District courts use a 'fairly lenient standard' that 'typically results in conditional certification of a representative class' when determining whether plaintiffs are similarly situated during the first stage of the class certification process."); Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011) ("The first stage is 'fairly lenient,' requiring only that plaintiffs show a colorable basis for their claim that a class of similarly situated plaintiffs exists."). In fact, in Frye, the trial court "*granted conditional certification* of a proposed class of employees who were subject to an automatic 30–minute payroll deduction for lunch breaks," Frye, 2010 WL 3862591, at *2 (emphasis added), only to later determine that discovery showed decertification to be appropriate.

Fourth, Defendants declare that "60% of the declarants are not eligible class members and therefore cannot be similarly situated to Wells." (Doc. 32 at 6). This sound like a whopping amount until one considers that only five declarations were filed. Even disregarding three of those declarations (60%), the remaining two declarations sufficiently allege a purported policy of having hourly employees work through breakfast, lunch, or dinner, while at the same time docking pay for those meal breaks. Besides, the "fairly lenient standard" employed "at the first stage for conditionally certifying a collective action . . . can even be met with a well-pleaded complaint prior to conducting discovery." Creely, 789 F. Supp.2d at 821-22; see also, Sanford v. Nucor-Yamato Steel Co., No. 3:18-CV-00158-KGB, 2021 WL 934033, at *3 (E.D. Ark. Mar. 11, 2021) (noting that "some courts require factual support for plaintiff's allegations at the initial conditional certification stage, while others permit a plaintiff to rely only on the complaint). In reality, Defendants' present "arguments go to the merits of Plaintiff's FLSA claim and . . . are, thus, inappropriate for the Court

to consider at the notice stage. Morris v. MPC Holdings, Inc., No. 20-CV-02840-CMA-NYW, 2021 WL 4124506, at *2 (D. Colo. Sept. 9, 2021) (collecting cases).

Apart from arguing that notice should not be sent, Defendants take issue with the form of notice proposed. Plaintiff wants to be allowed to: (1) send the notice by mail, text message, and email; (2) post the notice at all Tennova Healthcare locations, (3) direct Defendants to provide an electronic file containing the names, addresses, telephone numbers, e-mail addresses, dates of employment, position of employment, and location of employment for all putative class members; (4) send reminder notices halfway through the opt-in period; (4) have putative class members execute consent forms online. (See Doc. No. 31 at 17). Except for notice by mail, Defendants oppose each of these requests. (Doc. No. 32 at 8).

Courts have broad "discretion in deciding how" notice and consent forms are disseminated and returned. Honaker v. Wright Bros. Pizza, Inc., No. 2:18-cv-1528, 2020 WL 134137, at *3 (S.D. Ohio Jan. 13, 2020). Exercising that discretion, some courts have: (1) "routinely approved dual notification through regular mail and email," as well as permitted conspicuous posting at a defendant's office location, Evans, 2017 WL 2212977, at *7 (collecting cases); (2) directed defendants to provide electronic files with contact information for putative class members, McGill v. Nashville Tenn. Ventures, Inc., No. 3:19-cv-00922, 2020 U.S. Dist. LEXIS 187064, at *10–11 (M.D. Tenn. Oct. 8, 2020); and (3) approved online execution of consent forms. Vega v. Point Sec., LLC, No. A-17-cv-049-LY, 2017 U.S. Dist. LEXIS 148105, at *15 (W.D. Tex. Sept. 13, 2017). On the other hand, courts have regularly rejected notice "by text message unless Plaintiff[s] can show that notice by postal and electronic mail is" returned as undeliverable. Brittmon v. Upreach, LLC, 285 F. Supp. 3d 1033, 1045 (S.D. Ohio 2018); see also Hammond v. Floor & Decor Outlets of Am.,

Inc., No. 3:19-cv-01099, 2020 WL 6459641, 2020 U.S. Dist. LEXIS 205245, at *59 (M.D. Tenn. Nov. 3, 2020). Having considered the pros and cons of the arguments presented by the parties, the Court will permit the following: sending notice by mail and email; posting notice at all Tennova Healthcare locations; requiring Defendants to provide an electronic file containing contact information of putative class members; and allowing putative class members to execute consent forms online. However, unless and until Plaintiff shows that the permitted forms of notice were undeliverable by mail or email, notice via text message will not be permitted.

As for reminder notices, "[d]istrict courts . . . across the country are split as to whether reminder notices to potential class members are proper in FLSA actions." Dickensheets v. Arc Marine, LLC, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020). Nevertheless, courts have significant discretion in approving reminder notices. See Godsey v. Airstream, Inc., No. 3:19-cv-107, 2020 WL 502550, at *5 (S.D. Ohio Jan. 31, 2020) (allowing plaintiffs to send a reminder notice halfway through a 90-day opt-in period); Elmy v. W. Express, Inc., No. 3:17-cv-01199, 2019 WL 6715115, at *3 (M.D. Tenn. Dec. 10, 2019) (authorizing reminder notice); Myers v. Marietta Mem'l Hosp., No. 2:15-cv-2956, 2016 WL 11501744, at *3 (S.D. Ohio Sept. 6, 2016) (same). Having considered the parties's arguments, including Defendants' contention that the same are redundant and could appear as if the Court is encouraging individuals to join the lawsuit, the Court will permit the sending of notices because the FLSA is a remedial statute. That said, any reminder notice shall plainly state that the Court is not weighing in on the propriety of joining the suit or not, and shall state: "The Court takes no position regarding the merits of the claims or defenses at issue in this case. Whether to join this case is an individual decision and this reminder shall not be read as the Court encouraging or discouraging anyone from joining this lawsuit."

Finally, the Court approves Plaintiff's unopposed request for a sixty (60) day opt-in period.

### III. Conclusion

On the basis of the foregoing, Defendant's Partial Motion to Dismiss (Doc. No. 44) will be denied, although the claims of Laura Euler and Gina Pomeroy will be dismissed. Plaintiffs' Motion for Conditional Certification and Court Supervised Notice to Putative Class Members Pursuant To 29 U.S.C. § 216(b) (Doc. No. 30) will be granted under the terms set forth above and in accordance with the "Order Approving Conditional Certification" issued contemporaneously herewith.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE